**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NEQUAVA MATTHEWS, *on behalf of herself and others similarly situated*, | CIVIL ACTION NO. 2:22-cv-04632 |
| Plaintiff, | FILED ELECTRONICALLY ON NOVEMBER 18, 2022 |
| v. | CLASS/COLLECTIVE ACTION |
| PHILADELPHIA CORPORATION FOR AGING, | JURY TRIAL DEMANDED |
| Defendant | |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF RELEVANT FACTS ...........................................................2

III.  CONDITIONAL CERTIFICATION STANDARDS.........................................6

    A.    Modest Factual Showing Standard ........................................................ 6

    B.    Plaintiffs Must Show That They Are Similarly Situated ....................... 8

    C.    Plaintiffs Must Show A Common Unlawful Policy Or Practice That
          Violates The FLSA ............................................................................... 8

    D.    Plaintiffs Must Show That Their Claim Is Amenable To Resolution Using
          Common Proof....................................................................................... 8

IV.  ARGUMENT .....................................................................................................9

    A.    Plaintiffs Cannot Establish The Similarly Situated Requirement........... 9

    B.    Plaintiffs Also Cannot Establish That PCA Has A Common Policy Or
          Practice That Violates The FLSA ....................................................... 12

    C.    Conditional Certification Is Also Inappropriate Because An Assessment
          Of The Exemption Status Of Plaintiffs And Potential Members Requires
          Individualized Review Under The FLSA ............................................ 14

V.   CONCLUSION................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Babin v. Stantec, Inc.*, No. 09-CV-1160, 2010 WL 3363920 (E.D. Pa. Aug. 25, 2010) ................................................................................................ 10, 15-17

*Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660 (E.D. Pa. 2010) ....................................15

*Boes v. Applied Analysis Corp.*, No. 19-CV-505, 2020 WL 1526635 (E.D. Pa. Mar. 30, 2020) ................................................................................... 6, 8-10

*Bond v. Nat'l City Bank of Pa.*, No. 05-CV-0681, 2006 WL 1744474 (W.D. Pa. June 22, 2006) .....................................................................................................9

*Bramble v. Wal-Mart Stores, Inc.*, No. 09-CV-4932, 2011 WL 1389510 (E.D. Pa. Apr. 12, 2011) ...................................................................................... *Passim*

*Brown v. Barnes & Noble, Inc.*, 252 F. Supp. 3d 255 (S.D.N.Y. 2017) .......................................12

*Chemi v. Champion Mortg.*, No. 05-CV-1238, 2006 WL 7353427 (D.N.J. June 21, 2006) ..............................................................................................13

*Clarke v. Pei Wei Asian Diner LLC*, No. 3:20-CV-0800, 2023 WL 2518805 (N.D. Tex. Mar. 13, 2023) ...............................................................................16

*Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-CV-0840, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ..............................................................................14

*Felix v. Davis Moreno Constr., Inc.*, 2008 WL 4104261 (E.D. Cal. Sept. 3, 2008) .....................12

*Gromek v. Big Lots, Inc.*, No. 10 C 4070, 2010 WL 5313792 (N.D. Ill. Dec. 17, 2010) ..............................................................................................14

*Guillen v. Marshalls of MA*, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) ............................7

*Hoffmann-La Roche Inc.*, 493 U.S. at 170 ................................................................9, 14

*Kane v. Ollie's Bargain Outlet, Inc.*, No. 1:18-CV-02261, 2020 WL 6889195 (M.D. Pa. Nov. 24, 2020) ...............................................................................16

*Mitchell v. Covance, Inc.*, 438 F. Supp. 3d 341 (E.D. Pa. 2020) .......................................... 6-7, 13

*Moore v. PNC Bank*, N.A., No. 2:12-CV-1135, 2013 WL 2338251 (W.D. Pa. May 29, 2013) ..............................................................................................12

*Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493 (D.N.J. 2000) .................................9

*Shoop v. JusticeWorks YouthCare, Inc.*, No. 2:21-CV-732, 2022 WL 1748390
(W.D. Pa. May 31, 2022) .................................................................................13

*Skaggs v. Gabriel Bros., Inc.*, No. 1:19-CV-02032, 2021 WL 254113 (M.D. Pa.
Jan. 26, 2021) .................................................................................................16

*Smith v. Sovereign Bancorp, Inc.*, No. 03-CV-2420, 2003 WL 22701017 (E.D. Pa.
Nov. 13, 2003) .............................................................................................. 7-8

*Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189 (3d Cir. 2011) (*rev'd on
other grounds*, 569 U.S. 66 (2013) ............................................................... 6-7

*White v. Rick Bus Co.*, 743 F. Supp. 2d 380 (D.N.J. 2010) .....................................7

*Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012) ................................8

**Federal Statutes**

29 U.S.C. § 216(b) .............................................................................. 1-2, 6, 12

Fair Labor Standards Act ...................................................................... *Passim*

Older Adults Protective Services Act .........................................................2

**State Statutes**

35 P.S. § 10225.101, *et seq.* .......................................................................2

35 P.S. § 10225.301 ....................................................................................2

35 P.S. § 10225.303 ....................................................................................2

Pennsylvania Minimum Wage Act .................................................................1

**Regulations**

29 C.F.R. § 541.2 ......................................................................................10

6 Pa. Code § 15.42, *et seq.* .........................................................................2

6 Pa. Code § 15.121, *et seq.* .......................................................................2

Defendant Philadelphia Corporation for Aging ("Defendant" or "PCA") submits this Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification ("Motion," ECF Nos. 19, 20).

## I.    <u>INTRODUCTION</u>

Named Plaintiff Nequava Matthews ("Matthews") – a former employee of PCA – alleges that employees in the OAPS Investigator I and OAPS Investigator II positions (together, "OAPS Investigators") were improperly classified as exempt from the overtime requirements under the Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act ("PMWA"). Matthews and opt-ins Jasmine Wilson ("Wilson"), Tia Marie Kelly ("Kelly"), Sharena Williams ("Williams"), and Erica Riggs ("Riggs") (together, "Plaintiffs") now seek conditional certification of the collective action under 29 U.S.C. § 216(b).

Plaintiffs' claims against PCA for alleged unpaid overtime on behalf of the members of a purported collective action are based on pure speculation and boilerplate legal conclusions. Plaintiffs have failed to demonstrate that they are similarly situated to the putative collective action members ("Potential Members"), and, accordingly their claims are inappropriate for conditional certification under the FLSA.  Plaintiffs have presented no basis to show that they were subject to a systematic unlawful policy or practice applicable to all OAPS Investigators. Furthermore, Plaintiffs' proposed collective action would be unmanageable and frustrate judicial economy because Plaintiffs' claims require an individualized assessment of the pertinent job duties and compensation to determine their respective exemption status under the FLSA.

Plaintiffs' Motion for Conditional Certification is based upon the purported premise that they and the Potential Members were classified as FLSA exempt, paid on a salary basis, subject to common employment policies and the same job description, trained using the same materials, consistently worked over 40 hours per workweek, and ineligible for overtime pay regardless of

how many hours worked each week.  However, the materials submitted by Plaintiffs in support of their Motion do not establish that employees in the OAPS Investigator position are *substantially similar*; instead, Plaintiff askes the Court to *assume* that they are similar.  That is not enough to satisfy even the low threshold for conditional certification under § 216(b).

## II.   <u>STATEMENT OF RELEVANT FACTS</u>

PCA is a private, non-profit Area Agency on Aging ("AAA") that delivers critical services to this community.  PCA receives funding, in part, through federal and state sources. The method and manner by which OAPS Investigators do their work is also prescribed, in part, by the state.  (Declaration of Kristin Ahmed ("Ahmed Dec.") at ¶ 7, attached hereto as <u>Exhibit 1)</u>.  For example, OAPS Investigators' qualifications, training requirements, and general job duties are enshrined in state regulations applicable to all AAAs in Pennsylvania and under the Older Adults Protective Services Act (the "OAPSA").  *See* 35 P.S. § 10225.101 *et seq.*  The OAPSA mandates reporting requirements for suspected abuse and authorizes the Department of Aging to establish minimum standards of training and experience that protective services providers must follow.  *See* 35 P.S. § 10225.301; 6 Pa. Code § 15.121, *et seq.*  Under the OAPSA, all AAAs are required to investigate complaints of abuse within 72 hours after receipt of the report and apply certain methodologies for conducting such investigations.  *See* 35 P.S. § 10225.303; 6 Pa. Code § 15.42, *et seq.*  Despite these state-issued regulations and requirements, OAPS Investigators have day-to-day job duties and functions that vary significantly and are subject to significant discretion and judgment in the life and death situations they encounter. (Ahmed Dec. at ¶ 7).

Plaintiffs ask this Court to conditionally certify a collective action of "All individuals employed by Defendant as OAPS Investigators during any week within the past three years." (Motion, at p. 10).  This request is legally deficient because OAPS Investigators are not fungible.

2

They are dissimilar in what they do and how they do it.  As detailed below, their duties vary significantly based on case assignments, client needs, and areas of focus.

The OAPS Department is organized into five different sub-teams, including: (1) abuse and caregiver neglect, (2) self-neglect and abandonment, (3) exploitation, (4) substantiated, and (5) medical/facility cases that incorporate abuse, neglect, exploitation, and abandonment allegations.  (Ahmed Dec. at ¶ 8; Declaration of Oludayo Efunnuga ("Efunnuga Dec.") at ¶ 8, attached hereto as Exhibit 2).  Each OAPS Investigator is assigned to one of the five sub-teams and approximately two geographical regions in the Philadelphia area.  (Efunnuga Dec. at ¶ 9).

Some OAPS Investigators have specific knowledge or expertise that aligns with the subject matter of their sub-team.  (Efunnuga Dec. at ¶ 10).  For example, Nurse Investigators (a type of OAPS Investigator) within the medical/facility sub-team have the skills and training to investigate claims of complex medical and/or psychiatric issues.  (*Id.*).  Financial Exploitation Specialists (another type of OAPS Investigator) within the exploitation sub-team have subject-matter expertise in analyzing financial documents and working with banking institutions to uncover potential fraud and remedy financial theft and abuse.  (*Id.*).

Any person who believes that an older adult in Pennsylvania is being abused, neglected, exploited, or abandoned may file a confidential Report of Need ("RON") form with PCA or any other AAA in the state.  (Efunnuga Dec. at ¶ 11).  The RON form covers a wide range of harms against older adults in Pennsylvania, including abandonment, caretaker/caregiver neglect, emotional abuse, exploitation, physical abuse, self-neglect, and sexual abuse.  (Efunnuga Dec. at ¶ 12).  After an initial evaluation, the OAPS Intake Manager assigns each case to one of the five OAPS sub-teams.  (Efunnuga Dec. at ¶ 14).  Cases are assigned based on one of three categories of urgency, such as: (1) emergency, (2) priority, and (3) non-priority.  (Ahmed Dec. at ¶ 9;

Efunnuga Dec. at ¶ 15).  Investigations of emergency cases must commence immediately, priority cases within 24 hours, and non-priority cases within 72 hours.  (Efunnuga Dec. at ¶ 15).

Each case handled by the OAPS Department has the potential to be assigned to three different OAPS Investigators at different stages of the case, including: (1) a First Responder OAPS Investigator ("First Responder"), (2) an Intermediate OAPS Investigator, and (3) a Final OAPS Investigator (if the case is ultimately substantiated).[1]  (Ahmed Dec. at ¶ 10; Efunnuga Dec. at ¶ 16).  The First Responder handles the initial evaluation of the case which typically involves an in-person assessment of the client.[2]  (Ahmed Dec. at ¶ 11).  The First Responder determines whether emergency intervention is needed, such as, for example, police support, emergency physical or mental health services, or a protection from abuse ("PFA") order. (Efunnuga Dec. at ¶ 17).  If the First Responder is unable to make an initial in-person contact with the client, he or she will attempt three more times before the case passes to an "On Call Investigator."  (Ahmed Dec. at ¶ 11).

The Intermediate OAPS Investigator conducts an assessment of the case based on the First Responder's evaluation, gathers additional information on the client by talking to family members, friends, or care providers; develops a care plan for the client; and contacts and secures potential service providers.  (Ahmed Dec. at ¶ 12; Efunnuga Dec. at ¶ 18).  After the Intermediate OAPS Investigator completes such an assessment, the case passes to a Final OAPS

---

[1] "Intermediate OAPS Investigator" and "Final OAPS Investigator" are not formal terms used by PCA, but are included here to help explain the different types and varying functions of OAPS Investigators.

[2] During the COVID-19 Pandemic, starting in March 2020, the OAPS Department functioned very differently.  OAPS Investigators could no longer conduct in-person evaluations of clients, and relied upon video conferencing and telephone calls to investigate cases.  OAPS Investigators did not return to the field and in-person visits until approximately the spring of 2021.  (Ahmed Dec. at ¶ 18).

Investigator (if case is substantiated), who ensures that the care plan is followed, and that services remain in place, if needed, to mitigate risk to the client. (Ahmed Dec. at ¶ 13; Efunnuga Dec. at ¶ 19). The Final OAPS Investigator will conduct additional in-person evaluations to confirm that the care plan is effectuated and is responsible for eventually closing each case. (Efunnuga Dec. at ¶ 19).

The life cycle of every case investigated by PCA depends on the needs of the client and the nature of the claims. (Ahmed Dec. at ¶ 14; Efunnuga Dec. at ¶ 20). For example, a case involving alleged physical abuse generally will be assigned a higher level of urgency than a case involving alleged financial exploitation. (Ahmed Dec. at ¶ 14). An OAPS Investigator assigned to a case involving alleged physical abuse will look for specific indicators based on the physical presentation of the client, such as physical injuries and signs of intimidation or fear. (Ahmed Dec. at ¶ 15). The OAPS Investigator must determine what resources should be tailored to prevent or correct further physical abuse or domestic violence, such as counseling, emotional and/or medical services, a PFA order, or alternative living arrangements. (Ahmed Dec. at ¶ 15; Efunnuga Dec. at ¶ 20). A Financial Exploitation Specialist, on the other hand, typically relies on and analyzes financial paperwork to uncover evidence of financial abuse. (Ahmed Dec. at ¶ 16; Efunnuga Dec. at ¶ 20). A Financial Exploitation Specialist would evaluate whether and how to involve law enforcement, craft and submit a police report where fraud or theft is discovered, and provide resources for establishing power of attorney or guardianship. (Ahmed Dec. at ¶ 16; Efunnuga Dec. at ¶ 20).

OAPS Investigators rely on their independent judgment and assessment of the evidence to substantiate cases and develop the least restrictive care plan for clients. (Ahmed Dec. at ¶ 17). OAPS Investigators use their discretion and expertise to evaluate each case and to implement and

carry out a care plan that is as effective as possible based on the individual circumstances of the client.  (Efunnuga Dec. at ¶ 20).

## III.    <u>CONDITIONAL CERTIFICATION STANDARDS</u>

The FLSA allows Plaintiffs to bring a collective action on behalf of themselves and other employees "similarly situated."  29 U.S.C. § 216(b).  In FLSA collective actions, courts within the Third Circuit generally follow a two-stage certification process.  *Boes v. Applied Analysis Corp.*, No. 19-CV-505, 2020 WL 1526635, at *2 (E.D. Pa. Mar. 30, 2020).  At the first stage or "notice stage," the court determines whether the plaintiffs are "similarly situated," if the case is manageable as a collective action, and whether the court should use its discretion to authorize the sending notice to potential members of the collective action.  *Id.*

A.    <u>Modest Factual Showing Standard</u>

Courts typically apply a "fairly lenient" standard at the first stage to determine whether plaintiffs are similarly situated, relying on the pleadings and filed affidavits.  *Bramble v. Wal-Mart Stores, Inc.*, No. 09-CV-4932, 2011 WL 1389510, at *4, *6 (E.D. Pa. Apr. 12, 2011).  Plaintiffs' recitation of the legal standard for conditionally certifying a FLSA collective action gives the erroneous impression that an automatic presumption exists.  This is inaccurate.  *See Mitchell v. Covance, Inc.*, 438 F. Supp. 3d 341, 346 (E.D. Pa. 2020) ("Although the modest factual showing is a lenient standard, it does not compel automatic certification at the notice stage.").  Likewise, automatic preliminary class certification is at odds with the U.S. Supreme Court's admonition to "ascertain [ ] the contours of [a collective] action at the outset."  *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011) (*rev'd on other grounds*, 569 U.S. 66 (2013) citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989)).  "Mere allegations" by a plaintiff that an employer's alleged policy affected the plaintiff in the same way

as other employees, without more, is insufficient to warrant conditional certification. *Bramble*, 2011 WL 1389510, at *4.

Thus, Plaintiffs must establish the basis of a common policy that violates the FLSA to show that Potential Members are similarly situated, and the Court should not simply "rubber stamp" conclusory allegations.  In other words, "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk*, 656 F.3d at 193; *see also Smith v. Sovereign Bancorp, Inc.*, No. 03-CV-2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003) (denying conditional certification where the plaintiffs failed to "provide any factual or evidentiary basis" for the inclusion of the defendant's hourly employees in the putative class).

Although the burden at the first stage is light, it is "not nonexistent and the factual showing, even if modest, must still be based on some substance." *Bramble*, 2011 WL 1389510, at *3 (citing *Guillen v. Marshalls of MA*, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010)); *see also Mitchell*, 438 F. Supp. at 346 ("Although the modest factual showing is a lenient standard, it does not compel automatic certification at the notice stage.").  Similarly, assertion of generalizations and legal conclusions by Plaintiffs' counsel cannot satisfy the "modest factual showing" standard. *White v. Rick Bus Co.*, 743 F. Supp. 2d 380, 388 (D.N.J. 2010) (denying conditional certification and noting that "Plaintiffs who rely on affidavits or certifications with similarly sparse factual support have faced rejection in other courts as well").

Analysis of these principles show that Plaintiffs have not met this burden in this case. Plaintiffs have not demonstrated that that the Potential Members are similarly situated, or that PCA maintains any common policy that violates the FLSA.  Simply put, Plaintiffs have not

demonstrated that they could prove their claims using common or uniform proof.  Thus, the Court should deny Plaintiffs' Motion for Conditional Certification.

B.      Plaintiffs Must Show That They Are Similarly Situated

When seeking conditional certification, Plaintiffs bear the burden of establishing that they are similarly situated to those in the proposed collective action relative to the claims they allege. *Smith*, 2003 WL 22701017, at *3 ("rather than following automatic preliminary certification" plaintiffs must "make a basic factual showing that the proposed recipients of opt-in notices are similarly situated to the named plaintiffs").  For purposes of a FLSA misclassification claim, "similarly situated" must be "analyzed in terms of the nature of the job duties performed by each class [sic] member, as the ultimate issue to be determined is whether each employee was properly classified as exempt."  *Bramble*, 2011 WL 1389510, at *4 (internal citations omitted).

C.      Plaintiffs Must Show A Common Unlawful Policy Or Practice That Violates The FLSA

Plaintiffs must also show "that the putative class [sic] members were together the victims of a single decision, policy or plan."  *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 535 (3d Cir. 2012) (internal citations omitted).  Said differently, Plaintiffs must show a "factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees."  *Id.* at 536, n.4 (internal citations omitted). "If a plaintiff fails to produce evidence that the FLSA violations suffered by the collective were caused by a single decision, policy, or plan, then the motion for conditional certification should be denied."  *Boes*, 2020 WL 1526635, at *3.

D.      Plaintiffs Must Show That Their Claim Is Amenable To Resolution Using Common Proof

The underlying purpose of any collective action is to promote judicial economy by hearing substantially similar claims at the same time, which is only possible if the court can

adjudicate claims and defenses using evidence common to all class members.  *See Hoffmann-La Roche Inc.*, 493 U.S. at 170 ("[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact").  Thus, even at the conditional certification stage, Plaintiffs must show that their claims are susceptible to representative proof.  In other words, Plaintiffs must identify the factual or legal nexus that binds the various claims together and makes adjudication possible on a collective-wide basis.

This does not mean that the Court needs to evaluate the *merits* of Plaintiffs' claims (which is not the purpose of a motion for conditional certification).  If Plaintiffs cannot show that they can rely on common evidence to prove their collective-wide claims, conditional certification would not advance the goal of promoting judicial economy.  *See Bond v. Nat'l City Bank of Pa.*, No. 05-CV-0681, 2006 WL 1744474, at *4 (W.D. Pa. June 22, 2006) (denying conditional certification as "an examination of the claims asserted by the Named Plaintiffs would require a fact-intensive, individualized inquiry of the job position, job duties, work history, and alleged individual branch policies of every prospective plaintiff"); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000) (holding that litigating a misclassification case as a collective action "would be anything but efficient" as "[t]he exempt or non-exempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee-by-employee basis").

## IV.   ARGUMENT

### A.   Plaintiffs Cannot Establish The Similarly Situated Requirement

Plaintiffs have failed to make the requisite factual showing required for step one conditional certification.  *See Boes*, 2020 WL 1526635, at *2 (plaintiffs are "required to make a 'modest factual showing' and a 'fairly lenient standard' is employed in determining whether a plaintiff has met his burden at the first stage").  To obtain conditional certification, Plaintiffs

must show that the claims of the Potential Members can be proven through common evidence, versus individualized testimony, and that those individuals are similarly-situated. *Id.* Variations among the Plaintiffs and the Potential Members preclude a finding that employees are similarly situated. These differences indicate that whether Plaintiffs and the putative collective action members are similarly-situated is a fact-intensive inquiry that varies by employee.

The Third Circuit has identified several relevant factors to determine whether a plaintiff can certify a collective action. *Id.* "Those relevant factors are whether the putative plaintiffs: (1) are employed in the same department, division, and location; (2) advance similar claims; (3) seek substantially the same form of relief; and (4) have similar salaries and circumstances of employment." *Id.*

For purposes of a FLSA misclassification claim, "similarly situated" must be "analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt." *Bramble*, 2011 WL 1389510, at *5 (internal citations omitted) *citing Morisky*, 111 F. Supp. 2d at 498; 29 C.F.R. § 541.2 ("The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's ... duties meet the requirements of the regulations" implementing the FLSA.). Generalizations about a defendant's policies, or identifying only a few, general job functions shared between the plaintiff and potential collective action members are also insufficient to demonstrate the prerequisites for conditional certification. *Babin v. Stantec, Inc.*, No. 09-CV-1160, 2010 WL 3363920, at *3-4 (E.D. Pa. Aug. 25, 2010).

Plaintiffs hitch their motion to four pieces of evidence, including: (1) a job description for the OAPS Investigator position, (2) declarations, (3) an employee handbook, and (4) other employment-related policies.

(1) The job description that Plaintiffs rely upon do not indicate that employees in the OAPS Investigator position perform primarily the same job duties or non-exempt tasks.  In fact, the job description does not even address the five different sub-teams that make up the OAPS Department or the different types of OAPS Investigators who investigate substantiated cases. The job description provides no indication of what an OAPS Investigator is doing on a day-to-day basis, which is primarily dependent on his or her case assignment and the needs of each client.

(2) Plaintiffs' declarations are near verbatim copies of each other and provide no indication that Plaintiffs and the Potential Members performed similar job duties and responsibilities or performed the same non-exempt tasks.  The declarations supplied by Matthews and opt-in Plaintiffs Kelly and Williams are devoid of facts regarding their job duties and responsibilities and are almost identical, apart from dates of employment, salary range, and average hours worked per week.

(3) and (4) The employee handbook and other employment-related policies, including online trainings, are entirely unrelated to Plaintiffs' claims and fail to show that they and the putative members of the proposed collective action are "similarly situated."  All PCA employees are subject to the same employee handbook and policies (e.g., a clerk typist and the President of the PCA), which demonstrates nothing of legal significance in this case.

In sum, Plaintiffs have failed to make the requisite showing that the job responsibilities of Plaintiffs are the same or similar to those of the Potential Members or that they could properly be classified as non-exempt employees.

11

B.     Plaintiffs Also Cannot Establish That PCA Has A Common Policy Or Practice That Violates The FLSA

Plaintiffs also have failed to establish a "policy" that violates the FLSA beyond common exemption status.  The plan or scheme as alleged by Plaintiffs is that PCA improperly classified them as exempt under the FLSA.  Plaintiffs, however, must separately show that they and the members of the proposed collective action they seek to represent were "victims of a common policy or plan that violated the law." *Felix v. Davis Moreno Constr., Inc.*, 2008 WL 4104261, at *5 (E.D. Cal. Sept. 3, 2008) (internal citation omitted).

Courts in this circuit have denied conditional certification motions when plaintiffs have relied on a common exemption status as the factor that binds the putative collective action members together.  Said differently, the mere classification of a group of employees as exempt under the FLSA is insufficient to constitute a common policy, plan, or practice that renders all putative collective action members similarly situated for § 216(b) purposes.  *Bramble*, 2011 WL 1389510, at *4 ("[T]he mere classification of a group of employees — even a large or nationwide group — as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes."); *Moore v. PNC Bank*, N.A., No. 2:12-CV-1135, 2013 WL 2338251, at *5 (W.D. Pa. May 29, 2013) ("[C]ourts have readily exercised discretion and denied conditional certification motions when plaintiffs have relied on a common exemption status as the factor that binds a putative class together."); *Brown v. Barnes & Noble, Inc.*, 252 F. Supp. 3d 255, 262 (S.D.N.Y. 2017) ("Defendant's classification of [putative class members] as exempt, standing alone, is insufficient to satisfy the low threshold for conditional certification").  A policy that simply classifies employees as exempt under the FLSA "is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice" that renders putative

collective action members "similarly situated" for purposes of an FLSA collective action.

*Bramble*, 2011 WL 1389510, at *4 (internal citations omitted).

As explained by the court in *Chemi v. Champion Mortg.*, No. 05-CV-1238, 2006 WL

7353427, at *4 (D.N.J. June 21, 2006):

> The plan or scheme as alleged by plaintiffs is that defendants improperly categorized them as exempt under the FLSA. What plaintiffs really mean here is that they are challenging the designation of loan officers as non-exempt under the FLSA, the basis of its lawsuit. Logically, such an action on the part of defendants cannot be classified as a common policy or plan, otherwise every case brought before the courts alleging improper designation as non-exempt employees would automatically qualify for conditional class certification.

Plaintiffs' argument boils down to the proposition that any OAPS Investigator at PCA

who is classified as exempt is entitled to automatic conditional certification of a collective

action.  Since Plaintiffs cannot rely upon common exemption status alone and the job

descriptions on their face are not unlawful, they must show an actual basis that OAPS

Investigators as a group were required to perform non-exempt tasks, which they cannot do.

*Bramble*, 2011 WL 1389510, at *4.  In fact, Plaintiffs' Motion and supporting declarations are

entirely devoid of any description of similar, non-exempt tasks that PCA required OAPS

Investigators to perform.  *Mitchell*, 438 F. Supp. 3d at 347 (finding that the declarations filed in

support of conditional certification provided no help in clarifying whether the putative collective

was similarly situated as it was "filled primarily with the same formulaic assertions"); *Shoop v.*

*JusticeWorks YouthCare, Inc.*, No. 2:21-CV-732, 2022 WL 1748390, at *3 (W.D. Pa. May 31,

2022) (denying conditional certification because "Plaintiffs can point to no evidence other than

their conclusory affidavits and deposition testimony that they were not compensated for their

documentation or indirect travel time between clients").  Thus, Plaintiffs have failed to identify a

common unlawful policy or practice that warrants conditional certification of the putative

collective action.

C.    Conditional Certification Is Also Inappropriate Because An Assessment Of The
       Exemption Status Of Plaintiffs And Potential Members Requires Individualized
       Review Under The FLSA

Although Plaintiffs cannot demonstrate that they are similarly situated to the Potential

Members, they would have this Court believe that conditional certification should be granted

because PCA's salaried OAPS Investigators could not possibly have qualified for any exemption

under the FLSA.  This position is wholly flawed as a matter of fact and law because PCA

properly classifies Plaintiffs and other OAPS Investigators as exempt.  That point aside, the

allegations raised by Plaintiffs concerning the misclassification of OAPS Investigators requires

an individualized assessment of each employee's job duties and compensation structure to

properly determine their exemption status.  Hence, on the record before this Court, Plaintiffs'

claims are not appropriate for resolution as a collective action and would make the case

unmanageable.

Whether to judicially authorize and facilitate FLSA collective action notice rests within

the discretion of this Court and should only be authorized in "appropriate cases."  *Hoffmann-La*

*Roche Inc.*, 493 U.S. at 169.  As a matter of sound case management, before authorizing a notice,

a court should make a determination as to whether a manageable collective action exists.  *See,*

*e.g., Diaz v. Elecs. Boutique of Am., Inc*., No. 04-CV-0840, 2005 WL 2654270, at *8 n. 8

(W.D.N.Y. Oct. 17, 2005) (declining conditional certification where "significant differences

[were] apparent at the outset and discovery [could not] resolve the defects in plaintiffs' claims");

*Gromek v. Big* Lots, Inc., No. 10 C 4070, 2010 WL 5313792, at *5 (N.D. Ill. Dec. 17, 2010)

(declining conditional certification due to manageability concerns where workers were similarly

situated but where "significant differences were present between the job duties" of the proposed

collective action members which could not be "cured through discovery").  Hence, this Court

should consider whether ultimate proof of the merits will require such individualized testimony

so as to make the case unfair or unmanageable if adjudicated on a collective-wide basis. Once notice is issued to potential collective action members, that decision and the expenditure of resources cannot be reversed, even at the decertification stage.

This case is replete with individualized issues. Without even considering the merits of Plaintiffs' claims, certifying a collective action here would be unmanageable and frustrate judicial economy because an individual assessment will be required to determine the exemption qualifications of Plaintiffs and each Potential Member. This is a foreseeable and unavoidable outcome in a fact-intensive case involving FLSA exemption classifications. While Plaintiffs have attempted to bypass the specific facts and circumstances necessary to determine whether an employee qualifies for an exemption under the FLSA, this case would require the Court to delve into the specific job duties, education, qualifications, work hours, compensation structure, and other technicalities to determine the exemption status of each OAPS Investigator.

Courts facing similar dilemmas regarding claims of exemption misclassifications under the FLSA "have declined to grant conditional certification where consideration of the propriety of an employer's application of an exemption to its employees would require an individualized or fact intensive analysis." *Bramble*, 2011 WL 1389510, at *6 (citing *Evancho v. Sanofi-Aventis U.S. Inc.*, No. 07-CV-2266, 2007 WL 4546100, at *5 (D.N.J. Dec.19, 2007) (declining to grant conditional certification to a proposed collective action of pharmaceutical representatives where evidence indicated that employee responsibilities "may vary among plaintiffs and potential collective action members"); *Babin*, 2010 WL 3363920, at * 4 (declining conditional certification where there were significant differences in the geographic location and practices, day-to-day job duties, technical skill, and educational requirements among the membership of the proposed collective action); *Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660, 669

(E.D. Pa. 2010) (recognizing that conditional certification may be denied where the putative

collective action members identified contain a wide array of skills, responsibilities, and

experiences, such that evaluating whether employees have been properly classified could not be

done on a collective basis); *Kane v. Ollie's Bargain Outlet, Inc.*, No. 1:18-CV-02261, 2020 WL

6889195, at *10 (M.D. Pa. Nov. 24, 2020) ("the court finds that individualized inquiries would

be required as to the applicability of FLSA exemption provisions to each Plaintiff in this case");

*Skaggs v. Gabriel Bros., Inc.*, No. 1:19-CV-02032, 2021 WL 254113, at *1 (M.D. Pa. Jan. 26,

2021) ("individualized inquiries would be required as to the applicability of FLSA overtime

exemptions which would overwhelm and frustrate collective resolution"); *Clarke v. Pei Wei

Asian Diner LLC*, No. 3:20-CV-0800, 2023 WL 2518805, at *4 (N.D. Tex. Mar. 13, 2023)

(denying conditional certification because an analysis of the administrative and executive

exemptions under the FLSA requires individualized assessments "unsuitable to collective

action").

Hence, "[w]here disparate factual issues ... predominate over any common issues of law,

the remedial purposes of [the FLSA] do not justify proceeding collectively." *Id.* at *5.

Certifying a collective action in this matter will not promote judicial economy. In *Babin*, the

court declined to grant conditional certification under the modest factual showing standard to a

proposed group of "designers" alleged to have been misclassified as exempt. *Babin*, 2010 WL

3363920, at *2-3. In support of the motion, the plaintiff supplied notices from three potential

opt-in plaintiffs, declarations from two experts purportedly demonstrating that "all designers-

regardless of discipline, specialty, training or expertise-perform the same primary duties and

functions," and an admission from the defendant's corporate designee that all designers perform

the same common duties. *Id.* at *3. The court found that:

> [w]hile designers may share certain general job functions-including preparing or reviewing project designs, drawings, calculations, and documentation-that alone is insufficient to establish that designers are similarly situated. Rather, determining whether an employee is properly classified as overtime-exempt as an executive, administrative, or professional employee requires identifying the employee's "primary duty"- not just the employee's generalized job functions-and determining how much time the employee spends performing both exempt and non-exempt work.

*Id.* at *4.

Although Plaintiffs and the Potential Members share the same job title and "general" job functions, an analysis of Plaintiffs' claims that OAPS Investigators are misclassified as exempt would require an individualized inquiry as to whether the tasks performed by each Potential Member are or were similar to the tasks that Plaintiffs claim they performed and whether this would render them more appropriately classified as non-exempt employees. Such an endeavor would require the Court to identify each Potential Members' "primary duty," not just generalized job functions, which is insufficient to establish that OAPS Investigators are similarly situated. This is further complicated by the varying types of OAPS Investigators. The daily job duties and responsibilities of a "First Responder" differs significantly from that of a "Final Investigator." Similarly, a "Nurse Investigator" and a "Financial Exploitation Specialist" take on very different types of cases. Such an analysis to uncover each diverse Potential Members' primary job duties and responsibilities is not appropriately resolved through a collective action.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification should be denied.

**Dated:  March 20, 2023**
                                    PHILADELPHIA CORPORATION FOR
                                    AGING,
                                    By Counsel

                                    */s/ Gerald L. Maatman, Jr.*
                                    Gerald L. Maatman, Jr.
                                    DUANE MORRIS LLP
                                    190 South LaSalle Street, Suite 3700
                                    Chicago, IL 60603-3433
                                    Telephone: (312) 499-6700
                                    Facsimile: (312) 499-6701
                                    gmaatman@duanemorris.com

                                    Elisabeth Bassani
                                    DUANE MORRIS LLP
                                    30 South 17th Street
                                    Philadelphia, PA 19103-4196
                                    Telephone: (215) 979-1813
                                    Facsimile: (215) 689 0855
                                    ebassani@duanemorris.com

                                    **Counsel for Defendant**

## <u>CERTIFICATE OF SERVICE</u>

I, Gerald L. Maatman, counsel for Defendants, do hereby certify that on March 20, 2023, I electronically filed the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION** with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to the following counsel of record:

Peter D. Winebrake
Michelle Tolodziecki
Mark Gottesfeld
WINEBRAKE & SANTILLO, LLC
715 Twinning Rd, Suite 211
Dresher, PA 19025
Telephone: 215-884-2491
Fax: 215-884-2492
pwinebrake@winebrakelaw.com
mtolodziecki@winebrakelaw.com
mgottesfeld@winebrakelaw.com

***Counsel for Plaintiffs***

<u>*/s/ Gerald L. Maatman, Jr.*</u>
Gerald L. Maatman, Jr.