IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NEQUAVA MATTHEWS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 22-4632 |
| | : | |
| **PHILADELPHIA CORPORATION** | : | |
| **FOR AGING** | : | |

# MEMORANDUM

**MURPHY, J.**                                                                                                                **April 1, 2025**

Nequava Matthews, on behalf of herself and others similarly situated, brought this hybrid class and collective action against her former employer, Philadelphia Corporation for Aging ("PCA"), alleging misclassification of certain employees as exempt from overtime pay in violation of the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"). *See* DI 1 at 1.

Following discovery and two lengthy mediation sessions, the parties reached a proposed settlement. *See* DI 70-3 at 11. We preliminarily approved the settlement and notice process and held a hearing to resolve any objections and to hear argument from counsel. *See* DI 71; DI 77. Ms. Matthews now moves unopposed for final approval of the settlement, including certification of the class under Rule 23 and collective under FLSA § 16(b), approval of the service and attorneys' fee awards, and dismissal of the case with prejudice. DI 75 at 1-2.

Having reviewed the motion and supporting materials, including the final proposed settlement agreement, DI 75-1, the declarations submitted by counsel and the settlement administrator, DI 75-2; DI 76-1, and the parties' presentations at the March 6 fairness hearing, we grant the requested relief.

I. **Background**

PCA employed older adult protective services ("OAPS") investigators to investigate allegations of elder abuse and similar matters. DI 75-3 at 1. Plaintiff alleges that, between November 2019 and August 2024, PCA classified these investigators as salaried employees exempt from overtime pay. *Id.* at 2-5, 8-9. She contends that this classification violated both the FLSA and PMWA because OAPS Investigators primarily performed non-exempt work and regularly worked more than 40 hours per week without overtime compensation. *Id.* at 2

Plaintiff filed this lawsuit in November 2022, and in front of us now is a proposed settlement to that lawsuit. *See* DI 1; DI 75; DI 76; DI 79; DI 80. The settlement provides for a maximum of $975,000 to resolve all claims, including those of both Rule 23 class members and FLSA opt-ins. *See* DI 75-1 at 10-13. In exchange, class members release wage-and-hour claims arising during the covered period. *Id.* at 8-9.

On January 11, 2025, we granted preliminary approval of the settlement and authorized notice to the class. *See* DI 71. The notice period closed on March 3, 2025. *See* DI 79. No objections were submitted. See DI 76-1 ¶ 15; DI 79; DI 80. Plaintiff, unopposed, now seeks final approval for her hybrid class and FLSA collective action.[1] *See* DI 75; DI 76; DI 79; DI 80.

---

[1] We note the inherent uncertainty in the law regarding whether Rule 23 certification is required in hybrid FLSA and state-law wage actions where there is no opt-out requirement. While FLSA collective actions require potential plaintiffs to affirmatively opt-in, *see* 29 U.S.C. § 216(b), Rule 23 class actions typically bind all class members who do not opt out. Here, however, the settlement class effectively operates as an opt-in collective, because it affects only those who affirmatively return consent forms. *See, e.g., Knepper v. Rite Aid Corp.*, 675 F.3d 249, 258-59 (3d Cir. 2012) (recognizing potential tension between opt-in FLSA collective actions and opt-out Rule 23 state-law class actions); *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 131-33 (3d Cir. 2018) (same).

2

II.     **Certification**

      **A. The proposed class is certified under Rule 23**

A class may be certified for settlement purposes if it meets the requirements of Rule 23(a) and at least one provision of Rule 23(b).  *See* Fed. R. Civ. P. 23(a)-(b); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 619-22 (1997).  The proposed settlement class includes individuals employed by PCA as OAPS Investigators between November 18, 2019 and August 20, 2024 who returned timely consent forms.  DI 75-1 at 4; DI 75-3 at 17.  Noting again that no objections have been made, we find that that Rule 23(a)'s requirements are satisfied.

      *1. Rule 23(a)*

Under Rule 23(a), we consider: "(1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." *Amchem*, 521 U.S. at 613 (quotations omitted and cleaned up).

Numerosity is satisfied when the class is large enough that joinder would be impracticable. *See In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410,

---

At the fairness hearing, counsel for both parties indicated that they pursued dual certification under Rule 23 and the FLSA out of an abundance of caution.  We accordingly proceed under the hybrid framework chosen by the parties.  *Cf. In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013) ("Mindful that we are dealing with a settlement, we remain hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation.").  However, we would advise future litigants seeking approval of similar hybrid settlements in this court to highlight this issue clearly and early in the litigation and to brief specifically whether Rule 23 certification is necessary or appropriate under the circumstances.  *Cf. Alcantara v. Duran Landscaping, Inc.*, No. 21-3947, 2022 WL 2703610, at *3-5 (E.D. Pa. July 12, 2022) (arguing persuasively that settlement approval is not required in an FLSA collective action).  Often it may not be.

3

426 (3d Cir. 2016), *as amended* (May 2, 2016) (noting that classes of 40 or more are generally sufficient). The class is sufficiently numerous, with 53 members identified by name. *See* DI 76; DI 79; DI 80.

Commonality requires that class members share at least one common issue of law or fact. *See Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). This requirement "is easily met" where the claims stem from a common policy or practice. *Id.* The class members here were all subject to the same alleged misclassification as exempt employees under PCA's pay practices, raising shared factual and legal questions about the applicability of federal and state wage laws. *See* DI 10 ¶ 13.

Typicality assesses whether the named plaintiff's claims arise from the same course of conduct and are based on the same legal theories as the claims of the class. *See Baby Neal*, 43 F.3d at 57-58 ("Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice."). Ms. Matthews alleges that she, like the other class members, was a PCA OAPS investigator classified as exempt and denied overtime pay, rendering her claims typical of the class. See DI 1 ¶¶ 11-12.

Adequacy requires that the named plaintiff and class counsel fairly and competently represent the interests of absent class members. *See In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 312 (3d Cir. 1998). Ms. Matthews has no identified conflicts with the class and has participated in the litigation and settlement process. *See* DI 75-3 at 22. Her counsel, Winebrake & Santillo, LLC, has actively prosecuted the case and represents to us that it has extensive experience in wage-and-hour class litigation. *See* DI 75-2.

4

   2. *Rule 23(b)(3)*

Rule 23(b)(3) is also satisfied.  Under Rule 23(b)(3), certification is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members," and where a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Predominance is satisfied when the central issues of liability are common to all class members and can be resolved in a single proceeding.  *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016); *Amchem*, 521 U.S. at 623.  The key legal question — whether PCA misclassified OAPS investigators as exempt from overtime requirements — is common to all class members and predominates over any individual issues, such as variations in hours worked or damages.  *See* DI 10 ¶ 13.

Superiority considers whether a class action is the most efficient and appropriate mechanism for adjudicating the claims.  *See In re Prudential*, 148 F.3d at 315-16.  The factors are: the class members' interest in individually controlling separate actions, the extent of other existing litigation, the desirability of concentrating the claims into this forum, and the potential difficulties in managing this class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, all factors indicate that superiority is satisfied.  The settlement agreement does not preclude those who do not join the class from bringing individual claims; there is no indication of any overlapping or competing litigation; the claims are all tied to PCA's operations in Pennsylvania, making this forum appropriate; and because the class is being certified for settlement purposes, manageability concerns are null.  *See* DI 75-3 at 19-20; *In re Nat'l Football League*, 821 F.3d at 434-35; *Amchem*, 521 U.S. at 620 ("Confronted with a request for

5

settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

### B. FLSA collective is similarly situated

Final certification of a collective action under the FLSA requires that the plaintiffs be "similarly situated." *See Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536-37 (3d Cir. 2012). The non-exhaustive relevant factors we consider include whether plaintiffs share the same job title, performed similar duties, and advance similar legal claims. *Id.* "[C]ertification under the FLSA is less stringent than certification of a Rule 23 class." *Hall*, 2020 WL 1477688, at *7.

All opt-in plaintiffs worked as OAPS investigators, performed comparable duties, and claim they were denied overtime due to a common classification policy. DI 10 ¶ 13. Because the claims arise from the same alleged conduct and legal theory, the Court finds that the plaintiffs are similarly situated and grants final certification of the collective.

### C. **Winebrake & Santillo, LLC is appointed as class counsel**

We consider four non-exhaustive factors when appointing a class counsel under Rule 23(g)(1): (1) the work counsel has done pursuing claims; (2) counsel's experience handling similar claims in other actions; (3) counsel's relevant legal knowledge; and (4) resources committed to representing the class. Winebrake & Santillo has sufficiently represented to us that it has diligently pursued the claims and potential claims related to this case, has experience and success litigating similar cases, and has dedicated significant time and effort litigating this case. DI 75-2 ¶¶ 3-7, 22-23. Thus, we appoint Winebrake & Santillo as class counsel.

### III. Final approval of settlement

#### A. Notice was adequate

Rule 23(c)(2)(B) requires that class members in a class certified under Rule 23(b)(3) receive notice that,

> in clear, concise and plain language, state[s]: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) the class member's right to enter an appearance by an attorney; (v) the class member's right to be excluded from the class; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of settlement on class members.

This notice must also, generally, "summarize the litigation and the settlement" and "apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *In re Prudential*, 148 F.3d at 327.

Here, the notice plan approved by the Court was appropriately executed. *See* DI 76-1. The settlement administrator, Ms. Bench, distributed individualized notice by first-class mail to the last-known addresses of all potential class members. *Id.* ¶¶ 6-8. The notice letters informed recipients of their rights, summarized the settlement terms, explained the process for participating in or objecting to the settlement, and provided a phone number to field any additional questions. *See id.* at Ex. A. Ms. Bench also implemented reasonable follow-up efforts, including updating addresses and promptly re-mailing notices returned as undeliverable. *Id.* ¶¶ 9–10. No class members objected or raised concerns regarding the adequacy or manner of the notice provided. *Id.* ¶¶ 13-15; *see also* DI 79; DI 80. While the settlement before us does not bind those who do not affirmatively exclude themselves from the class, rendering some portions of Rule 23(c)(2)(B) inapplicable, the notice form provided to us is satisfactory under

7

Rule 23.  *See* DI 76-1 at Exs. A-C.  Accordingly, we find the notice adequate.

### B.  The Rule 23(e)(2) factors favor approval

Under Rule 23(e)(2),[2] we may approve a class settlement only upon finding that it is "fair, reasonable, and adequate" based on the factors provided.  Here, we find that all the Rule 23(e) factors are met.  We consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The first factor, adequacy of representation, "focuses 'on the actual performance of counsel acting on behalf of the class.'"  *Caddick v. Tasty Baking Co.*, No. 19-2106, 2021 WL

---

[2] We acknowledge that there is an open question within this Circuit concerning the continued relevance of the factors outlined in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), following the 2018 amendments to Rule 23(e)(2).  Because the *Girsh* factors and the Rule 23(e)(2) criteria largely overlap, litigants often provide duplicative analyses, resulting in unnecessary briefing — particularly in cases involving relatively modest settlements.  The late Judge Pratter, in *Hall*, recognized this redundancy, noting the substantial overlap between *Girsh* and Rule 23(e)(2).  *See Hall*, 2020 WL 1477688, at *6 n.11, *8-9 & n.12.  Given the statutory guidance provided by the amended Rule 23(e)(2), we conduct our analysis under the federal rule.  Future litigants in our court are encouraged to follow this approach and focus their briefing on Rule 23(e)(2) rather than repeating the analysis under *Girsh*.

1374607, at *6 (E.D. Pa. Apr. 12, 2021) (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). The second factor asks whether the settlement was reached following fair and collusion free negotiations. *See id.* ("[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." (quoting *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 13, 2016))). Here, the settlement was reached after extensive discovery and two private mediations conducted by counsel that represents itself as experienced in wage-related class actions. *See* DI 75-2. We therefore find that the first two factors favor approval.

The third factor asks us to evaluate whether the settlement provides adequate relief to class members considering the costs, risks, and delays of continued litigation, the effectiveness of the claims distribution process, the terms and timing of attorneys' fees, and any agreements required to be identified under Rule 23(e)(3). *See Hall*, 2020 WL 1477688, at *8-9; *Caddick*, 2021 WL 1374607, at *6-7. Here, the final settlement provides that defendant will pay $402,509.12, which is 63.14% of the total possible payment, to the 53 opted-in class members, amounting to an average payment of $7,594.51 which represents roughly seven additional weeks of payment. *See* DI 80; DI 75-3 at 13 n.10. The individual settlement amounts are calculated based on a compromise between the FLSA's fluctuating workweek method, which favors employers, and the PMWA's calculation method, which favors employees. *See* DI 75-1 at 16; DI 75-3 at 13-14 & nn.10-11. The settlement allocates payments proportionate to the number of hours worked during the relevant period, while increasing payment by 50% to Ms. Matthews and the 25 opt-ins prior to our preliminary approval. *See* DI 75-1 at 16-17. This recovery is

9

reasonable considering the litigation risks, including the parties' disputes over classification status and potential damages, as well as the inherent uncertainties and delays of proceeding through trial and appeals. Further, the settlement employs a straightforward distribution method. Class members who opt in are not required to file claims, but must only provide their names, address, and signature to receive payment. *See Hall*, 2020 WL 1477688, at *9; DI 76-1 at 8-9 (ECF).

Additionally, the terms for the proposed attorneys' fees are reasonable. Counsel asks for $330,000 in fees and costs, representing 33.8% of the total possible settlement. This award is within the range approved in similar cases, was clearly disclosed to class members, and any disapproved fees are to be distributed to class members. *See* DI 75-1 at 18; *Hall*, 2020 WL 1477688, at *9 ("[T]he average attorney's fees percentage in [surveyed class action] cases was 31.71% and that the median fee award was 33.3%." (quoting *Williams v. Aramark Sports, LLC*, No. 10-1044, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011))); *Caddick*, 2021 WL 1374607, at *7; DI 75-2 ¶¶ 3-18.

The final factor asks us to consider the settlement's treatment of class members relative to each other. As explained above, the individual settlement amounts are calculated based on hours worked during the relevant period, while increases payment by 50% to Ms. Matthews and the 25 original opt-ins. *See* DI 75-1 at 16-17. Counsel represents that this is fair because the original opt-ins and Ms. Matthews have been involved in the litigation and have participated in discovery. DI 75-3 at 15. We agree that this distribution is fair for the reasons presented by counsel.

We therefore find that all the Rule 23(e)(2) factors are met, and we approve of the

settlement under those considerations.

### C. FLSA collective action considerations[3]

Under the FLSA, a collective settlement must also reflect a "fair and reasonable resolution of a bona fide dispute." *Hall*, 2020 WL 1477688, at *9 (quoting *Adams v. Bayview Asset Mgmt., LLC*, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014)). The record establishes that the FLSA claims in this case were genuinely contested, and the settlement represents a meaningful compromise. For the same reasons supporting approval under Rule 23, we find the considerations for FLSA settlement demonstrate a fair and reasonable settlement and we grant the requested approval. *See id.* at *10 ("Indeed, Rule 23 applies an extra layer of stringency to the approval of FLSA collective actions. Consequently, for the reasons the Court approved of the Rule 23 class settlement, the FLSA collective action is also deemed fair and reasonable." (citing *Williams v. Aramark Sports, LLC*, No. 10-1044, 2011 WL 4018205, at *9 (E.D. Pa. Sept. 9, 2011))).

### D. Service award and attorneys' fees

Ms. Matthews requests a $7,500 service award in recognition of her efforts as the representative of the class. DI 75-3 at 21-22. The record reflects that Ms. Matthews assisted

---

[3] Further to note 1, *supra*, we note here the uncertainty regarding whether judicial approval of private FLSA settlements is required at all. Unlike Rule 23 class actions, the text of the FLSA does not explicitly mandate judicial approval of settlements. In *Alcantara*, Judge Wolson explained that because parties may voluntarily dismiss FLSA claims under Federal Rule of Civil Procedure 41, formal approval of FLSA settlements only creates an unnecessary hurdle that slows litigation and increases judicial burden. *Alcantara*, 2022 WL 2703610, at *3-5; *cf. Hall*, 2020 WL 1477688, at *10 (E.D. Pa. Mar. 25, 2020) (noting absence of Third Circuit guidance on this issue). We assess approval here solely because the parties explained at the fairness hearing that they are cautious and want to avoid upending lengthy settlement discussions. *See In re Baby Prods.*, 708 F.3d at 175.

counsel throughout the litigation and participated in the settlement process. The proposed award is in line with service awards approved previously in this district and represents a very small percentage of the total settlement fund. *See, e.g., Hall*, 2020 WL 1477688, at *10 (approving a $10,000 service award to the plaintiff related to a total settlement of around $1.1 million); *Wood v. Saroj & Manju Invs. Phila. LLC*, No. 19-2820, 2021 WL 1945809, at *10 (E.D. Pa. May 14, 2021) (approving a service fee of $2,500 relating to a $250,000 payment to the class"). Moreover, no class member objected to the proposed award. The Court finds the service award reasonable and approves the $7,500 payment.

      Class counsel, Winebrake & Santillo, requests a combined award of $330,000 to cover attorneys' fees, litigation expenses, and settlement administration costs. DI 75-3 at 23-25. Of that amount, $307,296.99 is attributable to attorneys' fees, while $17,749.99 covers litigation expenses and $4,953.02 covers settlement administration expenses. *Id.*; DI 75-2 ¶¶ 23-25. The requested attorneys' fee represents approximately 31.5% of the total settlement fund and 41.53% of the total amount that defendant will actually pay, should we approve. *See* DI 75-2 ¶¶ 23-25; DI 80. This is similar to other fees that have been approved in this district. *See Hall*, 2020 WL 1477688, at *11 ("Many courts have approved of similar awards, and Class Counsel points to courts in this jurisdiction that have approved of fees valued between 26% to 40% of the fund."). Based on this, and the previously mentioned qualification and diligence of counsel, the fee is reasonable under the factors identified in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000). *See Hall*, 2020 WL 1477688, at *11 ("Those factors include, '(1) the amount of the value created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by

counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; (7) the awards in similar cases.'" (quoting *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009))).

The Third Circuit has instructed us to give more weight to the comparison between the requested fees and the actual settlement payout when, such as in this case, some of the settlement is unclaimed. *See In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 723 (3d Cir. 2023). While this amount is near the high end of the attorneys' fee awards identified as typical in *Hall*, a lodestar cross-check supports the requested fee. The fee request is supported by declarations and reflects a significant downward adjustment from counsel's reported lodestar of $385,739.00, calculated based on Community Legal Services of Philadelphia's published hourly rates. DI 75-2 ¶¶ 19-23. We have reviewed the supporting materials, DI 75-2, and find the fee reasonable under the percentage-of-recovery method and supported by a lodestar cross-check. *See Gunter*, 223 F.3d at 195 n.1; *Hall*, 2020 WL 1477688, at *11-12.

The remaining $22,703.01 requested by Winebrake & Santillo covers litigation costs and third-party administration fees. These expenses are adequately documented and are approved. DI 75-2 ¶¶ 24-25; *id.* at Exs. 3-4.

Accordingly, the Court approves the requested award of $330,000 for fees, costs, and administration.

## IV. Conclusion

For the reasons stated above, we:

- certify the settlement class under Rule 23 and the FLSA collective under 29 U.S.C. § 216(b);

- appoint Winebrake & Santillo, LLC as class counsel;

- grant final approval of the settlement agreement, DI 75-1 as supplemented by DI 80, as fair, reasonable, and adequate under Rule 23(e) and as a fair and reasonable resolution of a bona fide FLSA dispute;

- approve the $7,500 service award to Ms. Matthews;

- approve the $330,000 combined award for attorneys' fees, litigation expenses, and settlement administration costs; and

- bar class and collective members from pursuing the released claims, as provided in the settlement agreement, DI 75-1 at 27.

An appropriate order follows.